# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PONH PHANNOURATH, | ) 1:10-cv-01597 AWI-BAM |
| Plaintiff, | ) |
| v. | ) **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| MICHAEL ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Ponh Phannourath ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income ("SSI") benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the District Court.

//

//

1

**FACTS AND PRIOR PROCEEDINGS**[1]

On March 30, 2001, Plaintiff filed her initial application for supplemental security income benefits alleging disability beginning January 25, 2001. AR 24, 67-79. The Commissioner denied Plaintiff's application both initially and upon reconsideration. Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"), which took place before ALJ Bert C. Hoffman on August 13, 2002. AR 67-79. On March 19, 2003, the ALJ issued a decision finding Plaintiff not disabled under the Social Security Act

On April 15, 2003, Plaintiff filed a subsequent SSI application which was granted in September 2003. However, in August 2005, the Appeals Council re-opened the favorable 2003 decision. The Appeals Council questioned the merits of the favorable decision as not supported by substantial evidence. AR 95-97, 134-39, 194-207. The Appeals Council directed ALJ Hoffman to re-consider the March 2003 decision in conjunction with evidence related to Plaintiff's April 2003 application. AR 95-97. On December 3, 2007, ALJ Hoffman held a second hearing, at which Plaintiff, assisted by her attorney and an interpreter, testified. AR 615-26. On February 26, 2008, the ALJ issued a decision, finding that Plaintiff was not disabled. AR 24-35. The Appeals Council denied Plaintiff's request for review on July 1, 2010 (AR 9-11), making the February 26, 2008 decision the final decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(C); 20 C.F.R. § 416.1481. This appeal followed.

**Medical Record**

In her 2001 application, Plaintiff alleged disability from asthma and emotional problems. AR 186. In her 2003 application, Plaintiff additionally alleged disability from seizures. AR 281. The ALJ noted in his February 2008 decision that Plaintiff also complained of back pain. AR 27. The entire medical record was reviewed by the Court. AR 288-468. The medical evidence will be referenced below as necessary to this Court's decision.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

**2002 Hearing Testimony**

ALJ Hoffman held the first hearing on August 13, 2002, in Fresno, California. Plaintiff, who was represented by counsel, testified at the hearing with the assistance of a Laotian interpreter. AR 585.

Plaintiff testified she was born on March 3, 1956, in Laos, where she attended school for about four years. AR 588. Since moving to the United States over twenty years ago, Plaintiff has attended school "very long time," but has never worked. AR 585. Plaintiff lives with her husband and three of her children. AR 587. She claimed not to know the ages of her children; she said that her husband and one of her children received SSI. AR 587.

At the outset of the hearing, the ALJ asked Plaintiff for her identification, and he noted on the record that Plaintiff presented a California driver's license; the ALJ read aloud her birth date and the dates of issuance and expiration. AR 586-87. Despite having a California driver's license, she testified that she stopped driving long ago. AR 595. Plaintiff testified to feeling tired, having problems with breathing, and experiencing seizures, which caused shakiness. AR 590-91. She stated that she also had mental difficulties, which impacted her memory. AR 594. Plaintiff denied helping or caring for her disabled husband or any of her four children, other than occasionally watering the lawn. AR 597. Plaintiff testified to immigrating to the United States twenty years earlier but, for reasons she could not explain, waiting until recently to naturalize. AR 529-30.

The ALJ then took testimony from Plaintiff's daughter, Roungtavanh Phannourath. Roungtavanh testified that because of her mother's disability, she shoulders many of the household chores and duties. According to Roungtavanh, her mother does little around the house and is easily angered. AR 605.

**2007 Hearing Testimony**

At the December 2007 hearing, the ALJ again asked Plaintiff if she had identification, and she responded that she did but that it was "outside" with her relatives. AR 623. When asked if she had a driver's license, she stated "yes" but denied driving. AR 623. Plaintiff testified that her condition had worsened since the last hearing. AR 618. She again denied knowing her children's ages and said she did not know if her husband received SSI but said that he had an "angry condition"

that prevented him from working. AR 622-23. Plaintiff testified that she shopped for food once per month. AR 621. She denied doing anything for her children other than watering the garden; she then stated that she did not want to be questioned further, as it was giving her a headache. AR 624.

### ALJ's Findings

In the decision dated February 26, 2008, the ALJ performed a sequential evaluation analysis and found that Plaintiff was not disabled. At Step Two, the ALJ relied on the medical evidence and determined that the medical evidence failed to support Plaintiff's claims of severe impairments over a 12-month continuous period, as required by the regulations. AR 27-35. See 20 C.F.R. § 416.920. In reaching this conclusion, the ALJ discussed, in great detail, the medical evidence in regards to Plaintiff's claims of asthma, back pain, seizures, and mental impairments. AR27-35. The ALJ also found that Plaintiff was less than credible. AR 35. Therefore, the ALJ determined Plaintiff was not disabled. AR 32.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff alleges that the ALJ's step-two finding was erroneous. Specifically, she asserts that the ALJ wrongly evaluated the medical evidence and erred in assessing her credibility.

**DISCUSSION[2]**

A.  *Step Two Findings*

At step two of the sequential evaluation process, the ALJ determined that Plaintiff had no medically determinable impairments. Plaintiff contends that the ALJ erred at step two by failing to find that her asthma, back problems, seizures, and mental impairments were severe. (Doc. 17 at 7-21).

At step two of the sequential evaluation process, plaintiff has the burden to present evidence of medical signs, symptoms and laboratory findings that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-1005 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); *see* 20 C.F.R. §§ 404.1520, 416.920. Substantial evidence supports an ALJ's determination that a claimant is not

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

disabled at step two where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." *Id.* (quoting SSR 96-4p, 1996 SSR LEXIS 11, at *5, 1996 WL 374187, at *1-*2).

    1.    ***Asthma***

Plaintiff first argues that the ALJ erred in failing to find her asthma severe because both her treating and examining physicians suggested that she should avoid irritants such as exposure to fumes, odors, gases, dust, humidity, and extreme temperatures. (Doc. 17 at 8).

Plaintiff was treated by Malik Baz, M.D. at the Asthma and Allergy Medical Center, where she underwent numerous tests over a period of years. AR 381-405. A pulmonary function test in March 1999 showed only a mild obstruction, and Plaintiff was diagnosed with allergic rhinitis, reactive airway disease, headache, and chronic cough. AR 395, 397. A chest x-ray the following month showed no cardiopulmonary disease. AR 392. In May 1999, Plaintiff complained of shortness of breath; wheezing was noted and she was prescribed Prednisone, a steroid used to treat allergic reactions, among other conditions. AR 442. The next month, Plaintiff reported feeling better with less shortness of breath; a pulmonary function test the same month showed normal spirometry (a mouth piece breathed into that records the amount and rate of air breathed over a period of time). AR 386, 440. In July 1999, Plaintiff's lungs were clear, and her prescription for prednisone was decreased. AR 437. A pulmonary function test in October 1999 showed, again, mild obstruction and normal spirometry. AR 383. In December 1999, Plaintiff reported wheezing; a chest x-ray that month was normal. AR 381, 421.

Pulmonary function tests through 2002 revealed continued normal spirometry and mild obstruction. AR 405, 422, 451-52, 455-55a, 460. Dr. Baz noted in an September 2001 letter in connection with Plaintiff's SSI claim that Plaintiff reported no problems at her last visit in May 2001 but may have occasional allergic complaints that exacerbate her asthma or may experience worsening asthma on exertion. AR 425. In a February 2002 letter, Dr. Baz reported that Plaintiff was feeling well. AR 412. By April 2002, Plaintiff's asthma was found stable with no significant allergy symptoms. AR 445. By July 2003, Dr. Baz's notes indicate that Plaintiff complained only of chronic pain in her head, neck, and arm and not of any respiratory ailment. AR 569.

Between November 1999 and November 2007, Plaintiff received routine care from Virender Kaleka. M.D. AR 313-50, 406-60, 471-75, 522-69. During this period, Dr. Kaleka, in circle-format pre-printed progress notes, recorded two instances of respiratory ailments: scattered rales in September 2005 and wheezing in April 2006. AR 538, 545.

The ALJ found that Plaintiff's asthma was not severe. In doing so, the ALJ correctly noted that in testing performed by Dr. Baz, Plaintiff's asthma and allergy specialist, revealed normal to mild findings. AR 29, 381, 383, 386, 395, 397, 421, 440, 442. See 20 C.F.R. § 404.1520a (d) ("mildly limited" under agency regulations indicates that the impairment is generally not severe). In a September 2001 letter, Dr. Baz noted only occasional allergic complaints and occasional worsening of asthma on exertion. AR 29, 425. In April 2002, Dr. Baz reported that Plaintiff's asthma was stable with no significant symptoms (AR 29, 445); and by July 2003, Dr. Baz's notes show that Plaintiff only complained of chronic pain and not of any respiratory ailments. AR 29, 569. The ALJ also noted that Dr. Kaleka's progress notes between November 1999 and November 2007–an eight-year period–indicated only two instances of respiratory complaints–scattered rales in September 2005 and wheezing in April 2006. AR 29, 538, 545.

Plaintiff contends that the ALJ was bound by the environmental limitations asserted by Dr. Kaleka and State agency reviewer, Dr. Shabaugh. (Doc. 17 at 8-9). The ALJ, observed that the clinical notes showed that Plaintiff's asthma was well-controlled with medication and failed to demonstrate work-related limitations. AR 29, 31, 464-68, 495. Thus, the evidence shows that the ALJ considered the evidence related to Plaintiff's complaints of asthma but found that the evidence failed to demonstrate a severe asthma impairment. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1041-1042 (9th Cir. 2008).

2. ***Back Pain***

Plaintiff argues that the ALJ should have included additional limitations in her RFC assessment for her chronic back pain. Dr. Kaelka or his assistant, B. Pinyasone, treated Plaintiff over an approximate eight-year period. During that period, Dr. Kaelka noted Plaintiff's complaints of low back pain and decreased range of motion by circling low back pain and decreased range of motion on pre-printed progress notes. AR 313-50, 406-60, 471-75, 522-69. A March 2003 x-ray of

7

1  Plaintiff's lower back revealed normal findings.  AR 474.

2      The ALJ correctly found that substantial evidence did not support a finding that Plaintiff's
3  back pain was a severe impairment.  The ALJ noted that Plaintiff's March 2003 back x-ray was
4  normal.  AR 30, 474. The ALJ also observed that Plaintiff had never been prescribed pain
5  medication, physical therapy, or surgery for her back pain.  There were also no reports by Plaintiff's
6  doctors of any difficulty walking or any restriction that would suggest a work-related limitation.  AR
7  30.  As the ALJ correctly observed, the evidence showed minimal to no treatment for back pain.  AR
8  30.

9      Moreover, Plaintiff's subjective complaints of back pain do not establish a severe
10 impairment.  Pain is a symptom, not an impairment, and "statements about [] pain... will not alone
11 establish... disab[ility]; there must be medical signs and laboratory findings which show... a medical
12 impairment(s) which could reasonably be expected to produce the pain... alleged."  20 C.F.R. §
13 416.929 (a).  Accordingly, the ALJ properly found that Plaintiff did not have a severe back
14 impairment.

15     **3.**    **Seizures**

16     Plaintiff next argues that the ALJ should have included limitations related to her seizures in
17 her RFC assessment.  The Commissioner responds that the ALJ properly considered the evidence
18 of Plaintiff's seizure disorder.

19     In March 2000, Plaintiff asked Dr. Kaleka for refills of her depakote, a medication generally
20 prescribed to treat seizure disorders.  AR 351.  Dr. Kaleka stated in his progress notes that he was
21 "leery" to prescribe additional depakote, and he questioned the existence of Plaintiff's seizure
22 disorder.  AR 351.  In June 2000, Plaintiff reported having two to four seizures per month but said
23 she had forgotten to take her medication.  AR 344.  In August 2002, Dr. Kaleka completed a medical
24 source statement questionnaire, in which he diagnosed Plaintiff with asthma, seizure disorder, and
25 depression. AR 464.  On June 28, 2003, consultative examiner, Nayan Shah, M.D., noted Plaintiff's
26 subjective complaints of seizures.  AR 480.  According to Dr. Shah, Plaintiff reported
27 "shaking..mostly on the left side of her body."  AR 480.  "It occurs about 2-3 times per month. The
28 shaking has been witnessed by her children.  She denies any tongue biting but she does report jaw

8

1  clenching and she says that she also has occasional urination while having these shaking episodes.
2  "There has been no loss of consciousness and she reports that she may even shake for up to one
3  hour." AR 480. Dr. Shah went on to assess Plaintiff with a "possible seizure disorder." AR 483.
4      In regards to Plaintiff's assertion of a severe seizure disorder, the ALJ noted that Dr. Kaleka
5  found her seizure disorder "questionable" and wondered whether her use of seizure medication was
6  appropriate. AR 30, 351. The ALJ also observed that in June 2000 Plaintiff reported multiple
7  seizures but also admitted to failing to take her seizure medication. AR 30, 344. The ALJ also
8  discussed Dr. Shah's 2003 consultative examination notation of a possible seizure disorder based
9  on Plaintiff's reports of shaking. AR 30, 480. The ALJ determined, however, that there was a
10 complete absence of any objective evidence in support of such a diagnosis. AR 30.
11     When attempting to resolve conflicts presented in the medical record, the ALJ is entitled to
12 draw inferences logically flowing from the evidence. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th
13 Cir. 1982). In this instance, the ALJ had to resolve a conflict between Plaintiff's subjective
14 complaints of seizures and the lack of objective medical evidence supporting Plaintiff's claims. The
15 record suggests that Plaintiff's seizures are under control when Plaintiff takes her medication. The
16 ALJ could reasonably infer that Plaintiff's seizures were not severe because her medication has
17 historically been successful at controlling, or at least significantly curtailing, the frequency of
18 Plaintiff's seizures. Accordingly, the ALJ was correct in finding that the objective medical evidence
19 did not support Plaintiff's alleged degree of disability with respect to her seizure disorder.
20     **4.  Mental Impairments**
21     Plaintiff also argues that the ALJ improperly rejected the physician opinion evidence related
22 to her mental impairments. (Doc. 17 at 11). According to Plaintiff, she suffers from depression, post
23 traumatic stress disorder, and a somatization disorder with nightmares about killings in her village
24 in Laos, loss of interest in daily activities, social isolation, irritability, and somatic symptoms of pain
25 and fatigue.
26     Cases in this circuit distinguish among the opinions of three types of physicians: 1) those who
27 treat the claimant (treating physicians); 2) those who examine but do not treat the claimant
28 (examining physicians); and 3) those who neither examine nor treat the claimant (nonexamining

9

physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

      i.    ***Dr. Richard Engeln***

In October 2000, Richard Engeln, Ph.D., conducted a psychological evaluation of Plaintiff with the assistance of an interpreter. AR 288-93. Dr. Engeln noted that Plaintiff talked socially with the interpreter but was uninterested in the tasks he presented to her and was "reticent to demonstrate her full array of competency." AR 290. Plaintiff talked with Dr. Engeln about her four children, including providing their ages and describing in detail their activities and school-status. AR 289. Plaintiff's intellectual testing was in the moderate range of mental retardation. AR 290. Dr. Engeln described Plaintiff's intellectual limitations as culturally and educationally related, rather than ability-related, and opined that she was socially and cognitively capable of work. AR 293. Dr. Engeln found no psychological restrictions. AR 293.

In finding that Plaintiff's mental impairment was not severe, the ALJ considered the October 2000 opinion of consultative psychological examiner, Dr. Engeln, who found that Plaintiff's response on testing was generally oppositional and histrionic and that Plaintiff was unwilling to demonstrate her full array of knowledge. AR 31-34, 292. Dr. Engeln opined that Plaintiff had no

psychological impairment. AR 31, 293. Plaintiff contends that "a more careful and reasonable reading" reveals that Dr. Engeln found a somatization disorder. (Doc 17 at 12). However, Plaintiff offers no cite to the record in support of this contention and fails to demonstrate any ambiguity in the psychologist's record. Plaintiff, in the alternative, asserts that in "the very least," the ALJ had a duty to clarify Dr. Engeln's findings. (Doc. 17 at 12). The ALJ's duty to develop the record, however, "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted); see 20 C.F.R. § 416.913 (e) (stating that the agency will seek additional information only when the information received from a medical source is inadequate and prevents the agency from making a decision regarding disability). The decision, however, does not demonstrate that the ALJ believed that the record was inadequate or ambiguous, and Plaintiff's contention is unavialing.

    ii.  ***Dr. Tieu***

In addition to the examination findings of Dr. Engeln, the ALJ also considered the September 2001 opinion and treatment notes of Plaintiff's treating physician, Dr. Tieu, who found marked psychological impairments. AR 31-34. In September 2001, after having examined Plaintiff on one-occasion, Dr. Tieu completed a medical source statement, asserting that Plaintiff had marked limitations in activities of daily living and maintaining social functioning with constant deficiencies in concentration, persistence, or pace and at least three episodes of mental decompensation. AR 379. He noted that Plaintiff was sleeping better but was depressed and "isolative." AR 380.

The ALJ noted that the sole basis for the September 2001 opinion was Dr. Tieu's one-time February 2001 examination. AR 32-33, 295-96, 379-80. The ALJ observed that the September 2001 opinion was a summary of Plaintiff's subjective complaints from the initial February 2001 examination and failed to confirm a medical disability. AR 32. The ALJ noted that the 2002 follow-up progress notes similarly concerned Plaintiff's subjective complaints of irritability and depressed mood and failed to demonstrate a severe, ongoing psychiatric impairment. AR 32, 461-62. Moreover, at her July 5, 2002 examination with Dr. Tieu, Plaintiff reported that her medications were helping. AR 33, 461. In fact, as noted by the ALJ, Plaintiff did not see Dr. Tieu again until

1  March 2005.  AR 34, 570-79.

2  The ALJ accurately observed that during Plaintiff's visits with Dr. Tieu in 2005 and 2006, she generally reported that she was "isolative" but feeling okay. AR 570-79.  Dr. Tieu also observed during that period that Plaintiff was alert and cooperative with good-to-moderate eye contact and, in August 2006– her last visit –reported feeling okay.  AR 570-79.  The ALJ determined that Dr. Tieu's treatment notes failed to support a finding of a severe depressive disorder.  AR 34.  Plaintiff asserts that these same treatment notes– by Dr. Tieu– support a contrary conclusion–a finding of a severe mental impairment. (Doc. 17 at 14).  The decision shows, however, that the ALJ carefully considered Dr. Tieu's treatment notes and opinions, making inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (explaining that "the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record").  Plaintiff's disagreement with the ALJ's conclusions is not evidence of error nor grounds for reversal. *Tommasetti*, 533 F.3d at 1041-42. The ALJ's determination to assign little weight to Dr. Tieu's opinion is supported by substantial evidence and the ALJ's finding is entitled to deference.

iii.  ***Dr. Kaleka***

In August 2002, Dr. Kaleka completed a medical source statement questionnaire, in which he asserted diagnoses of asthma, seizure disorder, and depression. AR 464.  He opined that Plaintiff did not have any postural or lifting limitations but should avoid humidity, dust, fumes, and chemicals that could cause an asthma attack.  AR 464-68. Additionally, Dr. Kaleka opined that Plaintiff was impaired in her ability to concentrate and to understand, remember, and carry-out simple one-or-two-step job instructions.  AR 463.

According to Plaintiff, the treatment notes of Dr. Kaleka support Dr. Tieu's extreme limitations. (Doc. 17 at 14-15).  However, as the ALJ noted, when Plaintiff was seen by Dr. Kaleka (or his nurse practitioner), the notes fail to document any psychological symptoms.  AR 34, 539-40, 543.  The last note by the nurse practitioner in March 2006, shows no depressive or other psychological symptoms.  AR 539. Accordingly, substantial evidence supports the ALJ's rejection of Dr. Kaleka's finding of mental limitations.  AR 32-34, 464-68.

      iv.  ***Dr. House***

  Plaintiff argues that the ALJ erred in rejecting the July 2003 opinion of consultative examiner Charles House, Ph.D. (Doc. 17 at 15-16). In July 2003, Dr. House, conducted a psychological evaluation in connection with Plaintiff's April 2003 SSI application. AR 484-90. Dr. House described Plaintiff as poorly groomed with marginal hygiene but alert. AR 484-85. Plaintiff told Dr. House that she had mental and medical problems, including headaches, backaches, and seizure. AR 485. She asserted that she thought of suicide but denied any plans or intent. AR 485. She also said she had nightmares related to her experiences in her home country, Laos. AR 485. Plaintiff claimed to have auditory hallucinations, including hearing her name called one to two times per week. AR 485. She alleged a seizure disorder but could not state the frequency of her purported seizures or describe the events leading to them. AR 485. Plaintiff was unable to tell Dr. House how her asserted mental difficulties interfered with her ability to work. AR 486. She acknowledged that she was not receiving mental health treatment and obtained medication through her primary care physician. AR 486. She reported cleaning up sometimes, going shopping with her husband and kids, and going on picnics with her children, as well as taking naps and staying in bed. AR 487. Dr. House diagnosed depressive disorder, which he determined "may well be a reflection of over-medication," and borderline intellectual functioning with a poor prognosis. AR 489. He opined that Plaintiff was impaired in all areas of her functional assessment. AR 489.

  Here, the ALJ gave specific, legitimate reasons for rejecting Dr. House's opinion. Most notably, Dr. House's opinion was inconsistent with the opinions of the other physicians and with the medical record. (Doc. 18 at 7). The ALJ thoroughly described the opinion of Dr. House and concluded that Dr. House's assessment was inconsistent with the treatment records, and the opinion of treating physician Dr. Tieu. The ALJ noted that Plaintiff's assertion of hallucinations was never alleged before or after Dr. House's July 2003 examination. AR 33. Further, the ALJ noted that Plaintiff's assertion of suicidal ideations were also never alleged before or after Dr. House's July 2003 examination. The ALJ found that Dr. House failed to perform any psychological tests to determine Plaintiff's IQ, and the ALJ opined that if he had, Dr. House's efforts may have been met with the same uncooperative attitude as found by Dr. Engeln. Finally, the ALJ found that the

extraordinary limitations found by Dr. House were inconsistent with Plaintiff's activities of daily living, her psychiatric treatment records and the longitudinal treatment notes. AR 33, 486-89.

Here the ALJ did not credit Dr. House's medical opinion because it was not supported by medical findings and it was inconsistent the medical record. Not only were these an appropriate reason, the ALJ was entitled to resolve the conflict between Dr. House's opinion and those of the other doctors in favor of the conclusion supported by the consistent objective evidence. Accordingly, the Court will not reverse the ALJ's decision for failure to properly weigh Dr. House's opinion testimony.

B.   ***Plaintiff's Credibility***

Plaintiff contends that the ALJ failed to provide sufficient reasons to discredit her testimony and the testimony of her daughter Roungtavanh Phannourath. The Court disagrees. The ALJ made an adverse credibility finding because: (1) there was evidence of malingering; (2) objective medical evidence did not support Plaintiff's subjective statements; (3) Plaintiff has received only conservative medical treatment; (4) Plaintiff's two treating physicians prescribed her no medications; and (5) Plaintiff gave inconsistent statements. Plaintiff challenges the ALJ's adverse credibility determination but that determination is supported by substantial evidence.

An ALJ must make specific findings and state clear and convincing reasons to reject a claimant's symptom testimony unless affirmative evidence of malingering is suggested in the record. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1993); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). In rejecting Plaintiff's credibility, the ALJ provided several valid reasons. AR 29.

First, the ALJ presented evidence of malingering. The ALJ noted that a psychological evaluation report from Dr. Engeln stated that Plaintiff did not fully cooperate at the consultative examination and therefore the obtained ability scores were invalid. AR 33. The ALJ was entitled to reject Plaintiff's testimony because there was evidence of malingering. *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("ALJ gave a detailed explanation supporting" his finding that claimant was not credible, including pointing to a "doctor's observation that [claimant] showed 'poor effort'" on

14

examination).

In addition to the evidence of malingering, in rejecting Plaintiff's credibility and the similar statements by Plaintiff's daughter, the ALJ provided several valid reasons. First, as noted earlier, the ALJ noted that there was sparse objective medical evidence to support Plaintiff's claims of disabling pain. An ALJ is entitled to consider whether there is a lack of objective medical evidence to corroborate a claimant's subjective symptoms, so long as it is not the only reason for discounting the claimant's credibility. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). Here, the ALJ determined that objective medical tests failed to show significant abnormalities. AR 30. Second, the ALJ considered the claims of Plaintiff and her daughter that Plaintiff was unmotivated and had problems with her memory, and made specific credibility findings that are supported by the record. AR 33, 36. The ALJ noted that these statements were not credible as Plaintiff received only conservative medical treatment. AR 35. The ALJ noted that before the 2007 hearing, Plaintiff submitted a new list of medications. AR 35. No medications were prescribed by her treating physicians Dr. Tieu or Dr. Baz. This was a valid reason for rejecting Plaintiff's credibility as an ALJ may use conservative medical treatment as a basis for a finding that Plaintiff's complaints of disabling pain are unjustified or exaggerated. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."); *see also Bunnell,* 947 F.2d at 346.

Next, the ALJ found that Plaintiff and her daughter gave inconsistent statements regarding Plaintiff's driving. At the 2002 hearing, Plaintiff stated that although she had a drivers license, she did not drive. AR 35. However, at a 2003 consultation with Dr. Shah, Plaintiff stated that she was tired and forgetful, especially when driving. AR 35. The ALJ also noted that at the 2002 hearing Plaintiff testified that she did not know her children's ages but the record showed that at her 2000 consultation she knew the ages and occupations of her children.

Finally, overall, Plaintiff's daughter's statements mirrored Plaintiff's statements. In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). An ALJ may

15

reject the testimony of a lay witness if the ALJ "give[s] germane reasons" for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis v. Apfel*, F.3d 503, 511 (9th Cir. 2001)). Moreover, where an ALJ provides germane reasons for rejecting a claimant's subjective complaints and where the statements of a lay witness are "similar to such complaints, "it follows that the ALJ gave germane reasons for rejecting" the statements of the lay witness." *Valentine*, 574 F.3d at 694. Because Plaintiff's daughters statements, here, mirrored, Plaintiff's subjective account of her symptoms and because the ALJ provided germane reasons for rejecting Plaintiff's statements, the ALJ gave germane reasons for rejecting Plaintiff's daughter's testimony. *See id.*

Here, the ALJ provided a number of specific reasons for discrediting Plaintiff's testimony, and identified specific testimony that was inconsistent with the record. The fact that Plaintiff may have another interpretation of her testimony that is reasonable does not mean that the ALJ erred. As long as the ALJ's interpretation is reasonable and is supported by substantial evidence, it is not the role of the Court to second-guess it. *Rollins v. Massanari*, 261 F. 3d 853, 857 (9th Cir. 2001). Accordingly, the ALJ did not err in rejecting the testimony of Plaintiff and her daughter.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Ponh Phannourath.

These findings and recommendations will be submitted to the district judge pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

//

//

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

**Dated:**   **September 10, 2012**                                  /s/ **Barbara A. McAuliffe**
                                                                        UNITED STATES MAGISTRATE JUDGE